UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                   PLAINTIFF

v.                                                         CRIMINAL ACTION NO. 3:09-CR-90-S

JOHN DENNIS CLARK III                                                  DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on a motion in limine of the plaintiff, United States of America, to introduce flight evidence as evidence of guilt against the defendant, John Dennis Clark III ("Defendant"). The United States Supreme Court has long held that evidence of flight after committing a crime is relevant to establish a defendant's consciousness of guilt, even though not sufficient in and of itself to sustain a conviction. *See, e.g., Allen v. United States*, 164 U.S. 492, 499, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *Alberty v. United States*, 162 U.S. 499, 510-11, 16 S.Ct. 864, 40 L.Ed. 1051 (1896); *Illinois v. Wardlow*, 528 U.S. 119, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). The Sixth Circuit recognizes a defendants' flight as evidence which allows an inference of guilty knowledge. *See United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995).

A District Court determining whether to admit evidence of flight must decide "whether the proffered evidence in fact tends to prove guilt" and is not "so prejudicial that its admission offends Fed.R.Evid. 403." *United States v. Dillon*, 870 F.3d 1125, 1126 (6th Cir. 1989). The Sixth Circuit has adopted the four-step analysis devised by the Fifth Circuit, which determines the probative value of flight evidence by considering

the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*Id*. at 1126-27 (citing *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977), *cert. denied* 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978)). The inferences must be "reasonably supported by the evidence." *Id*. at 1127.

In the case at hand, the United States proffers the following facts to be proven at trial. The FBI executed a search warrant at Defendant's home and contacted Defendant, requesting that he return home to speak with the FBI. Instead, Defendant's lawyer, Don Heavrin ("Heavrin"), contacted the FBI and informed them that Defendant was represented and instructed that Heavrin be contacted if Defendant was charged. Heavrin stated that he would then arrange for Defendant to turn himself in. Nine days later and unbeknownst to the FBI, Defendant left the United States for Warsaw, Poland, allegedly on a prescheduled and annual trip to teach English in Eastern Europe.

Approximately one month later, the FBI discovered Defendant had left the country and contacted Heavrin to arrange for Defendant's arrest. Heavrin confirmed that Defendant was in Eastern Europe and had traveled from Poland to Lithuania, but Defendant did not turn himself in. The grand jury issued an indictment for Defendant. An Interpol Red Notice, which is an international arrest warrant, was also issued for Defendant.

Several months later, Defendant contacted a Lithuanian Bank and requested that a friend be allowed to retrieve a new debit card for him. Budapest law enforcement then learned Defendant was in Budapest and working as an English language teacher. Law enforcement contacted the school

where Defendant was teaching and visited the school to gather information. Another school employee called Defendant and informed him that law enforcement had visited the school. Subsequently, Defendant failed to appear to teach his classes. When law enforcement tried to contact Defendant through the same telephone number that the school employee had called him on the day before, the number had been disconnected. Law enforcement discovered that Defendant had insisted the school pay him in cash and had convinced another school employee to have packages mailed to that employee for Defendant.

Over a year after the execution of the original search warrant, Defendant was arrested at an internet café and returned to the United States.

We conclude that the required inferences under the *Myers* approach are adequately supported by the evidence. First, Defendant left the country only nine days after the search warrant was executed at his house and the FBI had contacted him. *See Dillon*, 870 F.2d at 1128 (holding evidence of defendant leaving only six days after hearing about a co-defendant's planned grand jury testimony allowed a jury to make a "sound inference, not merely a speculative one" that a "flight" had occurred). Further, after hearing the police had visited the school where Defendant was employed in Budapest, he failed to appear to teach his class and his phone number was disconnected.

In examining the second and third inferences, the court should consider "two interrelated factors: immediacy and the defendant's knowledge that he is in trouble with the law." *Id*. For the *Myers* inferences to be satisfied, formal charges do not have to be brought against a defendant, but "any event which would tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind" will suffice. *Id*. The FBI contacting Defendant after executing a search warrant at his home

and police arriving at his school in Budapest are clearly events which would create fear of prosecution in a guilty mind. Only the "commencement of an investigation" may be necessary as the precipitating event. *Id*. (citing *United States v. Beahm*, 664 F.2d 414, 420 (4th Cir. 1981)).

Defendant asserts that his trip to Poland had been scheduled for some time and that he traveled to Eastern Europe to teach English every year. Even accepting this was a scheduled trip, an inference of a guilty conscience is evident from Defendant's subsequent conduct: (1) his failure to turn himself in upon an indictment by the grand jury and the issuance of an international arrest warrant; (2) his insistence on payment in cash from his employer in Budapest; (3) his request to have a Lithuanian bank allow someone else to pick up a new debit card for him; (4) his failure to appear to teach his classes when he was informed the police had visited his school; and (5) his phone number being disconnected upon knowledge that police had visited his school.

Last, the fourth inference is supported by the record evidence. The FBI discovered over 600 images of child pornography on Defendant's computer during the execution of the search warrant. The FBI was then unable to locate Defendant for over a year. The required inference from a guilty consciousness to actual guilt of the crimes charged against Defendant is well supported. Therefore, under the four step analysis adopted by the Sixth Circuit, the probative value of the fight evidence proffered by Plaintiff should be admitted as evidence to prove Defendant's consciousness of guilty.

An order consistent with this opinion will be entered this date.

October 25, 2011

Charles R. Simpson III, Judge
United States District Court